# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

UNITED STATES OF AMERICA                 CRIMINAL NO. 20-0293-01

VERSUS                                   JUDGE ELIZABETH E. FOOTE

DEMETRIUS LOSTON (01)                    MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court are two motions filed by Defendant Demetrius Loston ("Loston"): (1) a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and several supplements/amendments to that motion [Record Documents 425, 428, 445, 467 & 468]; and (2) a motion for Rule 6 discovery on his § 2255 motion [Record Document 440]. Loston also requests an evidentiary hearing on his § 2255 motion. Record Document 425-1 at 8. The Government opposes both motions and contends Loston is not entitled to any relief. Record Documents 429 & 444.

For the reasons assigned herein, Loston's motion for Rule 6 discovery [Record Document 440] is **DENIED**. Loston's request for an evidentiary hearing [Record Document 425-1 at 8] is **DENIED**. Loston's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Document 425] is **DENIED** and **DISMISSED WITH PREJUDICE**.

## Background

On August 19, 2021, Loston pleaded guilty to conspiracy to distribute and to possess with intent to distribute fifty grams or more of methamphetamine, in violation of

21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. Record Documents 64 & 173. With a total offense level of 41 and a criminal history category of VI, Loston's Guidelines range was 360 months to life. Record Document 258 at 22. Loston was also subject to a ten-year mandatory minimum. *Id.* The Court sentenced Loston at the bottom of his Guidelines range, to 360 months imprisonment and five years of supervised release. Record Document 253. The Court imposed its Guidelines sentence after considering the 18 U.S.C. § 3553(a) factors including Loston's criminal history, personal characteristics, role in the offense, age, career offender status, and for reasons otherwise orally stated at sentencing. Record Document 254 at 4.

In the instant motion and accompanying supplements, Loston contends that he is entitled to relief for several reasons. Loston claims his plea was involuntary because (a) his counsel promised him a particular sentence if he pleaded guilty, (b) there was an insufficient factual basis for his plea, which the Court should not have accepted, and (c) his counsel was ineffective for advising him to enter the guilty plea. Additionally, Loston argues his counsel was ineffective for failing to file a motion to suppress the Title III wiretaps on his cell phones, for failing to object to his career offender status, and for failing to raise the firearm enhancement applied at sentencing on appeal. Loston also raises alleged *Brady* violations, suggests he was deprived of a *Franks* hearing, and asserts his counsel acted under an actual conflict of interest. *See* Record Documents 425, 445, 467, 468.[1]

---

[1] The Court notes that attached to Loston's reply brief is a declaration dated November 2024, which includes various allegations—some of which are raised in Loston's § 2255 motion and supplements and some of which are not. The Court does not address every

## Law & Analysis

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court if: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a). "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" *United States v. Cooper*, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)). After a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (internal marks omitted) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal

---

allegation made in this declaration that was not raised in Loston's previous filings. This is because "[b]oth the Fifth Circuit and district courts have . . . refused to consider new issues raised for the first time in a movant's Reply in § 2255 cases." *Cajeli v. United States*, No. 13-CR-0038(17), 2020 WL 1650823, at *6 (E.D. Tex. Mar. 26, 2020) (citing *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998)). Any new factual allegations made in Loston's reply would have been untimely. *See* 28 U.S.C. § 2255(f); *United States v. Alaniz*, 5 F.4th 632, 638 (5th Cir. 2021) ("[T]he original filings must lay out factual allegations—not just cite cases with legal concepts—that support both the original and the newly-asserted claims.").

and would, if condoned, result in a complete miscarriage of justice." *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). Alleged sentencing issues and misapplication of the Sentencing Guidelines are not cognizable on a § 2255 motion, but a defendant may bring a claim that their counsel rendered ineffective assistance by failing to make the argument when it was cognizable. The Court may consider an ineffective assistance claim raised for the first time on a § 2255 motion. *See United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).

To state a successful claim of ineffective assistance of counsel, a petitioner must demonstrate two things: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish either prong of the *Strickland* test will result in a finding that counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson,* 115 F.3d 276, 280 (5th Cir. 1997). The petitioner bears the burden of proof of showing both prongs are met. *See Strickland*, 466 U.S. at 687. A court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice without inquiry into the remaining prong. *See id.* at 689-94.

When determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). If a tactical decision is "conscious and informed … [,

it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999). Courts must be "highly deferential" to counsel's performance and make every effort "to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001).

In the instant motion, Loston claims that he is entitled to relief based on: (1) his allegedly involuntary guilty plea, (2) his counsel's alleged ineffectiveness in failing to file a motion to suppress, (3) his counsel's alleged failure to object to his career offender status, (4) his counsel's alleged failure to raise the firearm enhancement applied at sentencing on appeal, (5) alleged *Brady* violations, and (6) his vague suggestions that he

was deprived of a *Franks* hearing and that his counsel acted under an actual conflict of interest. The Court considers each ground in turn.

## I. Voluntariness of Guilty Plea

Loston raises several issues that implicate the voluntariness of his guilty plea. Loston argues that his counsel promised him a particular sentence, there was an insufficient factual basis for his plea, and his counsel was ineffective for advising him to plead guilty before the Government produced certain lab results. *See* Record Documents 425 at 4 & 425-1 at 3.

The Fifth Circuit has explained that "[t]he critical issue in determining whether a plea was voluntary and intelligent is 'whether the defendant understood the nature and substance of the charges against him.'" *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (quoting *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991)). A defendant who affirms with sworn testimony that his guilty plea is voluntary, but later contends his guilty plea was involuntary, carries a "heavy burden." *United States v. Diaz*, 733 F.2d 371, 374 (5th Cir. 1984) (quoting *United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979)). To carry that burden, the defendant must show that his plea was "so much the product of . . . misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)).

### A. Counsel's Alleged Promise of a Particular Sentence

Loston first argues his plea was involuntary because his counsel assured him he would be sentenced to seventeen years imprisonment. *See* Record Document 425 at 1.

6

Loston claims that but for his counsel's promise, he would not have pleaded guilty and would have proceeded to trial. Record Document 425-1 at 3-4.

"When a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea." *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980) (citing *Brady v. United States*, 397 U.S. 742, 755 (1969)); *see also United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). To be entitled to an evidentiary hearing on an alleged promised sentence made by a defendant's attorney, the defendant must prove three things: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *See id.* However, a defendant generally "will not be heard to refute h[is] testimony given at a plea hearing while under oath" because their "[s]olemn declarations in open court carry a strong presumption of verity." *Cervantes*, 132 F.3d at 1110 (quoting *Blackledge*, 431 U.S. at 73-74). "If . . . the defendant's showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary." *Id.*

Attached to Loston's motion are two declarations. The first declaration is written by Loston. Loston's declaration states that his counsel told him multiple times that if he pleaded guilty, he would face "no more than 17 years." *See* Record Document 425-2 at 2. Loston contends he "pled guilty, at the advice of counsel, believing that [his] statutory maximum would be 17 years." *See id.* The second is a declaration from Tenneane Mims ("Mims"), Loston's fiancée. Mims's declaration states that in early December 2021,

Loston's counsel explained to her that Loston "would get no more than 17 years." *See id.* at 3.

Loston's assertion that he believed his statutory maximum penalty was seventeen years is clearly contradicted by the record. The plea agreement provided that the statutory mandatory minimum was ten years imprisonment and the statutory maximum penalty was life imprisonment. *See* Record Document 173 at 2. The plea agreement also states that "[t]he sentencing judge alone will decide what sentence to impose" and "[t]he failure of the Court to adhere to a sentencing recommendation tendered by counsel shall not be the basis for setting aside the guilty plea." *Id.* at 3-4.

At Loston's change of plea hearing, the Court explained in detail the Sentencing Guidelines, the mandatory minimum sentence, and maximum possible penalty. *See* Record Document 283 at 37-38. The Court specifically explained that the maximum penalty was "lifetime in prison, a fine of $10 million, and a lifetime of supervised release," and asked if Loston understood the minimum and maximum penalties. *See id.* at 38. Loston confirmed that he understood. *See id.* The Court asked Loston if anyone had "promised [him] anything that's not in writing in th[e] Plea Agreement." *See id.* at 39. Loston confirmed that no one had made any other promises. *See id.* The Court also asked if anyone had made Loston any promise as to what his Guidelines range would be. *See id.* at 42. Loston confirmed that no one had made any promise about his Guidelines range. *See id.*

Attached to the Government's Opposition to Loston's § 2255 motion is an affidavit from Loston's counsel. Record Document 448-1. Loston's counsel confirmed that he

"never told Mr. Lotson [sic] he would receive a sentence of 17 years of imprisonment." *Id.* at 2. Loston's counsel also confirmed that he told both Loston and Mims that he would request, or recommend, a 15-to-20 year sentence to the Court. *Id.*

The Court finds that the plea agreement, change of plea hearing transcript, and affidavit "clearly refute [Loston]'s allegations that [his] attorney had promised [him] a lower sentence." *See Cervantes*, 132 F.3d at 1111 (finding a defendant who contended she was promised a particular sentence was not entitled to habeas relief nor an evidentiary hearing where defendant's plea agreement was "short, clear, and unambiguous," and the defendant's testimony contradicted the defendant's allegation that any promise was made). Therefore, Loston's claim that his plea agreement was involuntary because his counsel promised him a particular sentence fails.

### B. Sufficiency of Factual Basis

Loston next argues that the Court erred in finding there was a sufficient factual basis for his guilty plea. Loston argues the factual basis was insufficient for two reasons. First, the Court did not have before it lab results showing the quantity and purity of the drugs seized. Record Documents 425 at 8 & 445 at 9. And second, the Court was aware Loston disagreed with certain details of the conspiracy alleged by the Government and outlined in testimony by a Government witness. Record Document 445 at 4-8.

Federal Rule of Criminal Procedure 11(b)(3) requires a court to "determine that there is a factual basis for the plea" before it accepts a defendant's plea. To determine whether there is a factual basis, "the district court must compare '(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the

indictment or [bill of] information.'" *United States v. Hildenbrand*, 527 F.3d 466, 474-75 (5th Cir. 2008) (quoting *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc)). The Fifth Circuit has found that an indictment itself may be used as the factual basis for a plea where sufficient facts are alleged. *See id.* at 475.

### i.    Quantity of Drugs

Loston argues that because the Government had not produced laboratory results proving the quantity of drugs seized at the time of the guilty plea, the Government had not yet "furnish[ed] sufficient evidence that the substance seized by DEA agents was in fact methamphetamine, actual or mixture, and more specifically, if the substance seized satisfied the allegations within the indictment." Record Document 445 at 5-6.

As explained in Loston's plea package, and at his change of plea hearing, there are five elements the Government would need to prove for Loston to be found guilty. The two elements that incorporate the drug amounts at issue are: "the overall scope of the conspiracy involved at least 50 grams of methamphetamine" and "the defendant knew or reasonably should have known that the scope of the conspiracy involved at least 50 grams of methamphetamine." Record Document 173-2; *see also* Record Document 283 at 29. Therefore, to accept Loston's guilty plea, the Court only needed a sufficient factual basis to believe there were at least 50 grams of methamphetamine involved.

At the change of plea hearing, DEA Agent Chris Hembree ("Agent Hembree") testified that the three kilograms of drugs found at Loston's residence were tested and confirmed to be presumptively positive for methamphetamine but the Government was waiting on the final lab results for the purity levels. *See* Record Document 283 at 18-19.

Agent Hembree also testified that there had been several controlled purchases, followed by a Title III wiretap that revealed a number of conversations during which Loston discussed methamphetamine sales. *See, e.g.*, *id.* at 14-15.

Any argument that Loston was unaware of the purity of the drugs for which he would be held accountable would also fail. The Court explained to Loston at his change of plea hearing that he was pleading before the parties knew the purity level, and therefore the quantity of drugs for which he would be held accountable at sentencing:

> THE COURT: Mr. Loston, [there's] something that's very important for you to understand right now. I know that Mr. Harville has probably explained to you that there is a different penalty for pure meth versus a mixture and substance containing methamphetamine, and right now you're pleading but you don't -- and there's a quantity that the Government has; but you don't know whether or not the drug is going to be -- or whether the Government will be able to prove that the Government -- that the drug is methamphetamine, pure meth, or a mixture and substance containing a detectable amount of methamphetamine. Do you understand that, sir?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: . . . [S]tated another way, you're pleading now without knowing what the Government will be able to prove at sentencing as to the purity of the drug. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Mr. Harville, have you discussed that with Mr. Loston and do you believe he understands that?
>
> MR. HARVILLE: I do, Your Honor.

*Id.* at 23.

The Court notes that after the change of plea hearing and before sentencing, the laboratory results for some of the drugs became available. Loston's PSR specifies that methamphetamine seized from his residence on Jasmine Lane totaled "2,787.5 grams ±

0.7 grams, with purity of 89% ± 6% totaling at least 2.48 kilograms of methamphetamine." Record Document 258 at 8. The PSR did *not* attribute to Loston the amounts of cocaine or Promethazine syrup recovered at Jasmine Lane, nor did it include the amounts of methamphetamine or marijuana recovered at 369 E. 76th Street because the laboratory reports for these drugs were unavailable. *See id.* at 9. Accordingly, Loston was ultimately held accountable at sentencing for 2,480.8 grams of pure methamphetamine. Loston's crime of conviction requires only 50 grams of methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii); *see also* Record Document 64.

The facts as alleged in the indictment, presumptive positive reports for the drugs seized, and Loston's admissions provided a sufficient factual basis for the guilty plea. Loston pleaded guilty with the knowledge that the Government laboratory reports were not yet available. *See* Record Document 283 at 23. Further, nothing in Loston's motion suggests that the drugs seized were not actually methamphetamine nor that the methamphetamine was an amount less than 50 grams. There was sufficient evidence for the Court to find that Loston's crime of conviction involved 50 or more grams of methamphetamine.

Therefore, Loston's argument that his plea was involuntary because there was an insufficient factual basis to support the type and amount of drugs seized fails.

### ii.    Disagreement with Proffered Testimony

Loston next argues that there was an insufficient factual basis for the guilty plea because Loston contested various facts alleged by the Government about the conspiracy. Loston contends that at the plea hearing, his counsel informed the Court that Loston

agreed with the factual basis that there was a conspiracy, but disagreed as to who was involved in the conspiracy. Record Document 445 at 3. Loston also argues that he denied all the testimony about the conspiracy offered by the Government's agent. *See id.* at 6-7. Loston cites the pages of the plea transcript on which he disagrees with the Agent's testimony that certain other individuals were involved in the conspiracy and argues that he denied "the whole citation of the government's case, including, but not limited to DEA Agent Hembree's complete testimony of the conspiracy." *See id.* at 5-7.

Loston's claims that he disagreed with the factual basis for the plea, including all of the Agent's testimony, is plainly contradicted by the record. At the change of plea hearing, the Government called Agent Hembree to testify about the charged conspiracy. Immediately following Agent Hembree's testimony, the Court asked Loston if he agreed with Agent Hembree's testimony." *See* Record Document 283 at 20. Loston answered that he agreed with "[s]ome of it." *Id.* When the Court asked Loston which portions of the testimony he disagreed with, Loston then clarified that he did not agree that Robert Merritt brought him methamphetamine, that two of his indicted codefendants were involved in the conspiracy, or that he was speaking to each defendant about methamphetamine on every phone call. *Id.* at 20-21.

The Court then asked Loston if he disagreed with any statements about the quantities of the drugs seized in two locations. *Id.* at 21-22. Loston responded: "I'm not going to even lie to you, Your Honor. The three that was found at Jasmine, I never even -- never had weighed them up; but I know it's possibly right. He's probably right." *Id.* at

22. The Court then asked Loston if there was anything else in the testimony he disagreed with. *Id.* Loston responded, "No ma'am." *Id.*

It is clear from a plain reading of the transcript that Loston did not deny the entirety of Agent Hembree's testimony. Loston explained the specific aspects of the testimony with which he disagreed, specifically declined to object to the testimony as to the drug quantities, and affirmed that he did not disagree with any parts of the testimony he had not already discussed with the Court. Loston has provided no evidence to show that he disagreed with the facts that prove the essential elements of his crime of conviction. Even assuming that Loston was correct that Robert Merritt did not bring him methamphetamine, two of the other indicted codefendants were not involved with him in the conspiracy, and that he was not speaking to the defendants about methamphetamine during every phone call, none of those facts negate the essential elements of Loston's crime of conviction.

The plea documents Loston signed and the comprehensive discussion Loston had with the Court at his plea hearing show that Loston understood the offense and agreed that the elements of the offense had been met. *See Cervantes*, 132 F.3d at 1110 ("Solemn declarations in open court carry a strong presumption of verity.") (quoting *Blackledge*, 431 U.S. at 73-74).[2] Therefore, Loston's claim that his guilty plea was involuntary because there was an insufficient factual basis fails.

---

[2] In a recent supplement, Loston argues that the factual basis for his guilty plea was insufficient because there are no videos of the controlled buys with a confidential informant. *See* Record Documents 467 at 2 & 468 at 2. Loston argues that he should have had an opportunity to challenge this lack of evidence. However, the lack of video

### C.  Ineffective Assistance as to Guilty Plea

Relatedly, Loston argues that his counsel was ineffective for advising him to plead guilty "before reviewing the lab results that the government was never able to produce." Record Document 425 at 4. However, as explained *supra*, Loston pleaded guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine. *See* Record Documents 64 & 173. The wiretapped phone calls, Government's presumptive positive tests on drugs seized from Loston, and Loston's admissions, constituted a sufficient factual basis for Loston's plea. The fact that the Government had not yet produced the final lab results with the amounts and purities of the drugs seized does not change this conclusion. This is particularly true since there were over three kilograms of methamphetamine that were seized and tested presumptively positive—much more than the 50 grams necessary to find Loston guilty of his crime of conviction. *See* Record Document 283 at 18-19.

In sum, there is no viable basis for ineffective assistance as to Loston's guilty plea. There was a sufficient factual basis for the plea and Loston's counsel did not promise him any sentence. The Court does not find that any of the deficiencies Loston alleges occurred. Therefore, Loston's counsel was not ineffective for counseling him to plead guilty to the charged offense.

---

evidence of the controlled buys does not negate the various other evidence available that formed a sufficient factual basis for the plea.

## II.    Failure to File Motion to Suppress

Loston next argues his counsel was ineffective for failing to file a motion to suppress the Title III wiretaps of his cell phones. *See* Record Document 425-1 at 4-5. Loston argues that an audio and video recording "established the foundation for the Title III wiretap," which was the cornerstone of the Government's case against Loston. *See id.* at 4. However, this audio and video recording malfunctioned and was thus not provided to Loston in discovery. *See id.* at 4-6. Loston argues that because of this malfunction and lack of production, there was no probable cause to wiretap his phone(s). *See id.*

"By pleading guilty voluntarily and unconditionally, a criminal defendant waives his right to challenge any nonjurisdictional defects in the criminal proceedings that occurred before the plea." *United States v. Olson*, 849 F.3d 230, 231 (5th Cir. 2017) (quoting *United States v. Stevens*, 487 F.3d 232, 238 (5th Cir. 2007)). "This includes all claims of ineffective assistance of counsel," including claims that counsel was ineffective for failing to investigate Fourth Amendment claims or to file a motion to suppress, "*except* insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (emphasis in original) (citations omitted); *Sifuentes v. Davis*, No. 16-CV-0433, 2018 WL 3862078, at *2 (N.D. Tex. Aug. 14, 2018).

As noted *supra*, Loston pleaded guilty voluntarily and unconditionally. *See* Record Document 173. Thus, Loston's claim fails because by pleading guilty, Loston "waived not only the filing of any and all pre-trial motions . . . but also any ineffective assistance of

counsel claims relating to his counsel's failure to file a motion to suppress." *See United States v. Moss*, No. 12-CV-1525, 2014 WL 4354535, at *8 (W.D. La. Sept. 2, 2014).

The Court pauses to note that Loston does argue that if his counsel had properly investigated the Title III wiretap and filed a motion to suppress, he would have proceeded to trial—essentially arguing that his plea was involuntary or unknowing because of his counsel's alleged failure to file a motion to suppress. *See* Record Documents 424-1 at 4-5 & 454 at 22-23. However, "[m]ere allegations from a petitioner that he would have demanded a trial if counsel's advice had been different are insufficient to establish a reasonable probability that he would have actually done so." *Thomas v. Dir., TDCJ-CID*, No. 12-CV-0282, 2012 WL 6684715, at *3 (E.D. Tex. Oct. 5, 2012), *report and recommendation adopted*, 2012 WL 6685566 (E.D. Tex. Dec. 20, 2012) (citing *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988)). Loston offers no evidence that he would have risked proceeding to trial based on his counsel's representations that the Title III wiretaps were not deficient.

Further, even if Loston had not waived his claim of ineffective assistance for the alleged failure to file a motion to suppress, the underlying claim would be meritless because there is no reason to believe that any motion to suppress would have been successful. The Supreme Court has explained that "the failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To successfully challenge counsel's failure to litigate a Fourth Amendment claim, a defendant must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been

different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375; *see Jackson v. Thaler*, 358 F. App'x 585, 586 (5th Cir. 2009) ("An attorney's failure to file a motion to suppress may constitute deficient performance if the evidence would have been suppressed as a result of the motion."). *Kimmelman* instructed:

> Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim . . . , a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

477 U.S. at 382. The defendant bears the burden of proving that the evidence "admitted at his trial would have been suppressed as a result of such a motion." *Jackson*, 358 F. App'x at 586.

As with all ineffective assistance claims, the reasonableness of counsel's failure to file a motion to suppress is assessed "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott*, 11 F.4th 364, 369 (5th Cir. 2021) (internal marks omitted); *see also Martin v. Maxey*, 98 F.3d 844, 848 (5th Cir. 1996) ("This circuit has held that counsel's failure to move to suppress evidence, when the evidence would have been suppressed if objected to, can constitute deficient performance (cause), unless counsel's failure was due to a tactical decision."), *abrogation on other grounds recognized by Evans v. Davis*, 875 F.3d 210, 217 n.5 (5th Cir. 2017). The question is not whether defense counsel made the correct decision but rather whether defense counsel acted reasonably. *See Scott*, 11 F.4th at 369; *United States v. Dowling*, 458 F. App'x 396, 401 (5th Cir. 2012).

Loston contends that his counsel should have filed a motion to suppress the evidence obtained through the Title III wiretap of his phone(s) for two reasons. *See* Record Document 425-1 at 4-5. First, Loston argues that there was no probable cause for the wiretap because the audio and video recording of the sales to a confidential informant malfunctioned and because the drugs obtained during the sale were not tested by an independent laboratory. *Id.* at 4-5 & Record Document 454 at 22-23. Second, Loston argues that, to the extent probable cause existed to authorize the wiretaps, that probable cause was based on material misstatements and omissions in the underlying affidavit seeking authorization. Record Document 454 at 19, 22-23.

Pursuant to 18 U.S.C. § 2518(10)(a), a defendant can move to suppress a Title III wiretap if:

(i)      the wiretap was unlawfully intercepted;

(ii)     the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii)    the interception was not made in conformity with the order of authorization or approval.

Loston apparently argues that any court order of authorization was insufficient on its face. However, the fact that the recording of the controlled buys was unavailable does not mean that the controlled buys did not occur, or that there was no testimony or evidence that those controlled buys occurred. To the extent that the Government witnessed controlled buys between Loston and another individual, the Government had probable cause to believe Loston was engaged in distribution of controlled substances. Loston's own filings recount that the confidential source personally brought the

Government the controlled substances provided to them by Loston. *See, e.g.*, Record Document 454 at 19 ("On Thursday, July 2, 2020, agents . . . met and for[m]ulated plans wherein the CS would make a controlled purchase [sic] of one ounce of methamphetamine from Loston. Here the controlled buy was successful, and the CS then relinquished the drugs to the agent."). These controlled buys are sufficient to find probable cause existed for a Title III wiretap.

Loston further alleges that there were material misstatements and omissions in the affidavits underlying the wiretaps for both target phones. As to "Target Phone I," Loston argues that the underlying affidavit for this phone omitted that the DEA tested drugs obtained during controlled buys on Thursday, July 2, 2020, and July 30, 2020, and omitted that video and audio recordings of the controlled buys were unavailable. Record Document 454 at 21. As to "Target Phone II," Loston argues that the affidavit had material omissions because it omitted the fact that the recording equipment malfunctioned with regard to Target Phone II.[3] *Id.* at 22. As explained *supra*, these facts would not negate a finding of probable cause. Even if the recordings themselves became unavailable, the Government still would have had the testimony of both the confidential

_____

[3] For the first time on reply, Loston attempts to argue that the wiretap for "Target Phone II" was wholly improper because there was no evidence that particular phone was connected to the conspiracy. *See* Record Document 454 at 19. As Loston himself explains, the DEA's investigation into Loston had already begun and the DEA sought a wiretap on "Target Phone II" after it learned Loston had a second cell phone. *See id.* Loston cites no valid reason for the suppression of the wiretap for "Target Phone II."

informant and officer(s) monitoring the wiretap to testify to the same information that would have been available on the recording. Thus, the omissions are not material.[4]

In sum, by voluntarily and unconditionally pleading guilty, Loston waived any claim that his counsel was ineffective for failing to file a motion to suppress the Title III wiretaps. But even if he had not waived this claim, the claim would be without merit.

### III.    Failure to Object to Career Offender Status

Loston next argues that his counsel was ineffective for failing to object to the Court's finding that Loston was a career offender. *See* Record Document 425 at 7. He argues that the Court incorrectly considered predicate crimes that were inchoate offenses. *Id.* Loston argues that, because the language allowing the use of inchoate offenses as predicate crimes appears in the commentary to the Sentencing Guidelines rather than the

---

[4] Again, for the first time on reply, Loston raises that the necessity requirement for a Title III wiretap was not met in the affidavits underlying the wiretap of his phone(s). Record Document 454 at 22-23; *see* 18 U.S.C. § 2518(1)(c) (requiring that applications for a Title III wiretap include an explanation about "whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous"); *see also United States v. Guerra-Marez*, 928 F.2d 665, 669-70 (5th Cir. 1991) ("[C]ourts are reluctant to impose their hindsight upon law enforcement agencies, and the proponent of the application need not establish that every other imaginable mode of investigation would be unsuccessful. . . . Instead, [courts] take a common sense view of the statements contained in the application to determine if the necessity requirement is satisfied." (internal quotation and citations omitted)).

The Court notes that this contention contradicts Loston's argument that there was not sufficient probable cause for the Title III wiretap. Loston apparently attempts to argue both that (a) there was insufficient probable cause for the Title III wiretap and (b) that there was sufficient probable cause for an arrest warrant such that the Title III wiretap was unnecessary. Because this contention is raised for the first time in Loston's reply and because of the resulting contradiction, the Court does not consider this substantive argument. *See Cajeli*, 2020 WL 1650823, at *6 (citing *Cervantes*, 132 F.3d at 1111).

Guidelines themselves, the Court's use of that language to classify him as a career offender was improper. *See id.*

Loston correctly states that his current crime of conviction, conspiracy to distribute and possess with intent to distribute methamphetamine, is an inchoate crime. *See id.* However, Loston misunderstands the application of the career offender enhancement. The career offender enhancement applies based on previous convictions; it does not take into account the defendant's instant crime of conviction. U.S.S.G. § 4B1.1 provides that a defendant is a career offender if "the defendant has at least two *prior* felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (emphasis added). For example, Loston's career offender status was based on two previous convictions for possession with intent to distribute a schedule II controlled dangerous substance. Record Document 258 at 10. Notably, neither of those convictions were for inchoate offenses.

Accordingly, any argument that Loston should not have been subject to the career offender enhancement or that his counsel was ineffective for failing to so argue is meritless for at least two reasons. First, the fact that Loston's current crime of conviction is an inchoate crime has no bearing on the application of the career offender enhancement. And second, neither of Loston's two previous convictions that served as predicates for the career offender enhancement were inchoate offenses.

But even if Loston's predicates were inchoate offenses, the argument would remain without merit. At the time of Loston's sentencing, the language authorizing the use of inchoate offenses as predicates appeared only in the Guidelines commentary,

rather than the substantive text of the Guidelines. U.S.S.G. § 4B1.1 cmt. 1 (U.S. Sent'g Comm'n 2021). Even when the language authorizing the use of inchoate offenses appeared only in commentary, the Fifth Circuit held that commentary to be binding. *United States v. Vargas*, 74 F.4th 673, 698 (5th Cir. 2023) (holding that this Guideline comment was "binding because it d[id] not violat[e] the dictates of § 4B1.2(b)" (quoting *Stinson v. United States*, 508 U.S. 36, 43 (1993)), *cert. denied*, 144 S. Ct. 828 (2024). Since Loston's appeal, the Sentencing Guidelines have been amended and the language authorizing the use of inchoate offenses now appears in the text of the Guidelines. *See* U.S.S.G. § 4B1.2(d).

Any objection by Loston's counsel to the Court's application of the career offender enhancement would have been meritless. Therefore, his counsel was not ineffective for his failure to object and this claim fails. *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

## IV.    Failure to Raise Firearm Enhancement on Appeal

Loston argues his counsel was ineffective for failing to object to a two-level enhancement for possession of a firearm.[5] *See* Record Document 425 at 5 & 425-1 at 6. Loston argues that the firearm was neither a part of a drug transaction nor located where

---

[5] Loston first claims his counsel did not object to the enhancement. *See* Record Document 425 at 5. However, he later concedes that his counsel did object to the enhancement but was ineffective for failing to raise the objection on appeal. *See, e.g.*, Record Document 425-1 at 6.

the drugs were found and thus his counsel was ineffective for failing to raise the issue on appeal. *See* Record Document 425-1 at 6-7.

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "On appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). "Rather, it means, as it does at trial, counsel performing in a reasonably effective manner." *Id.* "While counsel is expected to raise [s]olid, meritorious arguments based on directly controlling precedent," counsel is not required to "'raise every nonfrivolous ground' for objecting to a ruling adverse to the defendant's interests." *United States v. Lagos*, 25 F.4th 329, 337 (5th Cir. 2022) (internal marks and quotations omitted) (alteration in original). Therefore, "[t]o prevail on an ineffective-assistance-of-appellate-counsel claim, a petitioner must prove that (1) counsel failed to raise a particular nonfrivolous issue that was clearly stronger than issues that counsel did present and (2) had counsel raised the issue, he would have prevailed on appeal." *Gonzalez v. Davis*, 18-CV-0950, 2019 WL 6686803, at *18 (N.D. Tex. Dec. 6, 2019) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Loston's counsel was not deficient for failing to raise a challenge to the firearm enhancement on appeal because the challenge would have been meritless. *See Smith*, 907 F.2d at 585 n.6. Further, there is no reason to believe that this ground for appeal

would have been stronger than the other grounds raised on appeal.[6] The Court carefully considered, and rejected, Loston's challenge to the firearm enhancement at sentencing. Record Document 314 at 60-65.

The PSR held Loston accountable for a black Sarsilmaz .9mm caliber pistol, loaded with 33 rounds of ammunition, and which had an extended magazine. *See* Record Documents 258 at 9 & 314 at 60. When Loston was arrested, he was leaving his vehicle and entering a bank. He had drugs on his person, and had drugs and the weapon at issue in his car. *See* Record Document 314 at 60-61.

U.S.S.G. § 2D1.1(b)(1) calls for a two-point increase "if a dangerous weapon (including a firearm) was possessed." Commentary Note 11 states, "[t]he enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

As the Court explained at sentencing, "[t]here is no legal requirement that the weapons actually be brandished, used, or threatened to be used in connection with the drug trafficking." Record Document 314 at 64. "Weapon possession is established if the government proves by a preponderance of the evidence that a temporal and spatial relationship existed between the weapon, the drug trafficking activity, and the defendant. . . . The government must provide evidence that the weapon was found in the same

---

[6] On appeal, Loston's counsel raised challenges to (1) the sentencing enhancement for maintaining a drug premises and (2) the substantive reasonableness of Loston's sentence. *See* Record Document 420.

location where drugs or drug paraphernalia are stored or where part of the transaction occurred." *United States v. Caicedo*, 103 F.3d 410, 412 (5th Cir. 1997).

Once the government establishes that a firearm was present during the offense, the adjustment should be applied "unless it is clearly improbable that the weapon was connected with the offense." *See United States v. Garza*, 118 F.3d 278, 285 (5th Cir. 1997). It is the Defendant's burden to show that it was clearly improbable that the weapon was connected to the offense. *United States v. Romans*, 823 F.3d 299, 317 (5th Cir. 2016).

Loston did not meet his burden at sentencing of showing that it was clearly improbable that the weapon was connected to the offense. As the Court explained at sentencing:

> Loston had just received 2 kilos of drugs from Merritt. He tells Merritt he's going to the bank and he'll meet up with him, but he tells Merritt not to come into the bank parking lot. And we also know that he had drugs with him in the car [and] that Mr. Loston has drugs on his person. . . .
> The enhancement is not inapplicable simply because Mr. Loston left his gun in the car going into the bank. The enhancement appears to be satisfied, and the defendant has not established that it's clearly improbable that the gun was connected to the drug activity.

Record Document 314 at 64-65. The objection to the application of the firearms enhancement was meritless at sentencing and would have been similarly meritless on appeal. Thus, Loston's counsel was not deficient nor did prejudice issue from his failure to raise the objection on appeal, and this claim fails.

## V.    *Brady* Violations

Loston next argues that the Government failed to provide two specific materials: laboratory results for the "alleged methamphetamine" seized at Jasmine Lane, and the

audio and video recording of the sales to the Government's confidential informant. *See* Record Documents 425 at 8 & 425-1 at 5-6. Loston argues that the Government's failures constitute violations of *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Record Documents 425 at 8 & 425-1 at 5-6.

Under the reigning Fifth Circuit interpretation of *Brady*, "there is no constitutional right to exculpatory evidence during plea bargaining." *See Mansfield v. Williamson County*, 30 F.4th 276, 280 (5th Cir. 2022) (citing *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009)); *Matthew v. Johnson*, 201 F.3d 353 (5th Cir. 2000); *Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000)). The Fifth Circuit justifies this rule by explaining that "[w]hile *Brady* and its progeny necessitate that prosecutors disclose exculpatory evidence during trial, . . . *Brady* focuses on the integrity of trials and does not reach pre-trial guilty pleas." *Mansfield*, 30 F. 4th at 280. The Court is bound by this precedent. Thus, because Loston pleaded guilty, his *Brady* claim is foreclosed.

However, even if Loston could state a *Brady* claim, that claim would fail. "To establish a *Brady* violation, a defendant must show that: (1) favorable evidence (2) was suppressed by the prosecution (3) that was material to guilt or punishment." *United States v. Vasquez-Hernandez*, 314 F. Supp. 3d 744, 764 (W.D. Tex. 2018) (citing *Pippin v. Dretke*, 434 F.3d 782, 789 (5th Cir. 2005)), *aff'd*, 924 F.3d 164 (5th Cir. 2019).

As to the laboratory results for the drugs seized at Jasmine Lane, the record is clear that the Government did not suppress or hide the fact that these laboratory results were unavailable at the time of Loston's guilty plea. As explained *supra*, the factual basis

for Loston's guilty plea was sufficient without the lab results. Thus, any delay in receiving the lab results did not undermine Loston's guilty plea.

The delayed and/or unavailable lab results were immaterial to Loston's sentencing because Loston's Guidelines range and sentence was based only on the drugs for which there were lab reports available at the time of sentencing. Loston's presentence investigation report specifically includes that the alleged methamphetamine law enforcement seized from Jasmine Lane was tested and found to be 2,787.5 grams ± 0.7 grams, with a purity of 89% ± 6%. Record Document 258 at 8; *see also id.* at 7 (specifying that law enforcement seized approximately 2,862.5 grams of suspected methamphetamine from Jasmine Lane). Thus, Loston was held accountable for 2,480.8 grams (2.48 kilograms) of pure methamphetamine or "ice." *Id.*

There were some drugs seized from Loston for which lab reports were not available. This includes 1,037.3 grams of suspected methamphetamine and 180.7 grams of suspected marijuana seized from 369 East 76th Street. *Id.* at 7. This also includes 33.4 grams of suspected cocaine and one bottle of Promethazine syrup seized from Jasmine Lane. *Id.* However, because lab results were not available for these drugs, they were not attributed to Loston and did not affect his Guidelines calculation. Loston's presentence investigation report states: "Lab reports were not available for the methamphetamine and marijuana recovered from 369 E. 76th Street in Shreveport, Louisiana, nor for the cocaine and Promethazine syrup recovered from 9305 Jasmine Lane in Shreveport, Louisiana. Therefore, those drugs will <u>not</u> be included in the guideline calculations." *Id.* at 8 (emphasis added). Accordingly, the unavailable lab results did not affect Loston's

sentence. *See United States v. Bagley*, 473 U.S. 667, 682 (1985) ("[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").

As to the video and audio recordings of drug sales to the Government's confidential informant, this evidence was not "suppressed" because the Government itself did not have access to those recordings. Loston's own motion acknowledges that the recording of the controlled buys were unavailable because the recording equipment malfunctioned. *See* Record Document 425 at 5-6.

Accordingly, Loston's *Brady* claims fail.

## VI.  Additional Grounds

Finally, the Court observes that Loston cites in passing several other potential grounds for relief. In a motion requesting leave to amend his § 2255 motion, Loston requested leave to amend to add claims that his counsel failed to request a *Franks* hearing and that his counsel acted under a conflict of interest. *See* Record Document 428 at 2. Loston did not provide any underlying facts or argument in that motion, but did provide some context in his reply brief.

In his reply brief, Loston briefly mentioned his alleged deprivation of a *Franks* hearing,[7] arguing that a hearing was necessary to examine the material omissions from

---

[7] "The purpose of a *Franks* hearing is to determine the truthfulness of an affidavit supporting a warrant." *United States v. Jordan*, No. 23-CR-0205, 2025 WL 1908397, at *3 (N.D. Tex. July 10, 2025) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). To be entitled to a *Franks* hearing, a defendant must identify which specific part of the affidavit is false, and "show 'deliberate falsehood' or a 'reckless disregard for the truth' on the part of the officers." *United States v. Jefferson*, 89 F.4th 494, 505 (5th Cir. 2023) (quoting *Franks*, 438 U.S. at 171).

the affidavit underlying the Title III wiretap. *See* Record Document 454 at 30. However, as explained *supra*, Loston does not allege any cognizable, material omissions in the underlying affidavit. Therefore, even considering the argument briefly made in Loston's reply brief, Loston fails to meet his burden as to this claim.

Also in his reply brief, Loston explains that his counsel functioned under a conflict of interest because Loston disagreed with him during pretrial preparations. Record Document 454 at 34-35. Loston argues that this is evidenced by two pretrial motions he filed *pro se* in this matter. First, a *pro se* motion for appointment of new counsel and additional time for filing. Record Document 454-1 at 165 (citing Record Document 57). The Court denied this motion, explaining that Loston was represented by competent counsel and that counsel could request an extension regarding discovery if necessary. Record Document 60. Second, a *pro se* motion for production of grand jury transcripts. Record Document 454-1 at 170 (citing Record Document 58). The Court denied this motion, explaining that "Jencks Act material [would] be produced to Defendant by the Government before trial in accordance with the usual procedures of th[e] court." Record Document 61. These motions, and Loston's preferences regarding pretrial preparation do not indicate a conflict of interest nor ineffective assistance on the part of his counsel. Loston fails to meet his burden as to this claim.

Finally, in addition to these two grounds, Loston argues in a supplement that his counsel was ineffective for failing to object to a sentencing disparity between him and other defendants. Record Documents 467 at 2 & 468 at 2. According to Loston his counsel should have objected to the disparity or "argue[d] mitigating factors such as rehabilitation

30

or parole/probation status." Record Document 467 at 2. The Court observes that—in addition to Loston's counsel's advocacy during the sentencing hearing—Loston's counsel submitted a seventeen-page pre-sentencing memorandum arguing for a lenient sentence for Loston. Record Document 240. The memorandum detailed Loston's life, familial and personal struggles with substance abuse, included pictures of Loston with friends and family, and requested a lenient sentence. *See id.* In short, the record does not support Loston's claim that his counsel did not argue for a more lenient sentence and this claim fails.

### VII.   Additional Requests for Relief

In addition to his requests for § 2255 relief, Loston requests an evidentiary hearing on his motion and Rule 6 discovery on his motion. Record Documents 425-1 at 8 & 440. Loston is not entitled to an evidentiary hearing because it is conclusive from his filings that he is not entitled to § 2255 relief. *See United States v. Harrison*, 910 F.3d 824, 826-27 (5th Cir. 2018) (finding that a court may deny a § 2255 motion without an evidentiary hearing if "the movant would not be entitled to relief as a matter of law, even if his factual assertions were true"), *as revised* (Dec. 19, 2018).

Nor is Loston entitled to Rule 6 discovery on his motion. Loston specifically requests Rule 6 discovery to obtain two items:

1) A copy of any and all lab reports and affidavits . . . pertaining to the seized drugs that [were] found on Jasmine Lane that the Government used as evidence only; and
2) A copy of any and all chain of custody that was used by the DEA and any other agency that was directly and/or indirectly involved in the above case as to seizure of the drugs that [were] found on Jasmine Lane only.

31

Record Document 440 at 2. "[A] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *In re Robinson*, 917 F.3d 856, 865 (5th Cir. 2019) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). A Court may find there is good cause for discovery on a § 2255 motion "where specific allegations before the court show reason to believe that a petitioner may, if the facts are fully developed, be able to demonstrate that he . . . is entitled to relief." *Id.* (omission in original) (quoting *United States v. Fields*, 761 F.3d 443, 478 (5th Cir. 2014)).

As explained *supra*, Loston is not entitled to any relief based on the laboratory results that were not produced for the cocaine and Promethazine syrup seized at Jasmine Lane. Even if the lab results showed that those substances were not narcotics,[8] there was a sufficient factual basis for Loston to plead guilty to conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine. The additional substances seized for which lab reports were not available were not accounted for in calculating Loston's Guidelines range or resulting sentence.

## Conclusion

For the reasons assigned herein, Loston's motion for Rule 6 discovery [Record Document 440] is **DENIED**. Loston's request for an evidentiary hearing [Record Document 425-1 at 8] is **DENIED**. Loston's motion to vacate, set aside, or correct

---

[8] Importantly, Loston does not appear to contest anywhere in his motion or supplements that the additional substances seized at Jasmine Lane were not narcotics—only that the Government was not able to produce the lab results proving that the substances were narcotics.

sentence pursuant to 28 U.S.C. § 2255 [Record Document 425] is **DENIED and DISMISSED WITH PREJUDICE**.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Loston has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this 7th day of August, 2025.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE